**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Gonzales,<br><br>    Plaintiff,<br><br>v.<br><br>City of Lake Havasu City, et al.,<br><br>    Defendants. | No. CV-17-08205-PCT-GMS<br><br>**ORDER** |

Pending before the Court are Defendant City of Lake Havasu City ("Defendant")'s Motion for Summary Judgment (Doc. 123) and Plaintiff Tom Gonzales ("Plaintiff")'s Motion to Strike (Doc. 137).

Also pending are Plaintiff's Motion to Preclude the Testimony of Defendant's Expert Witness Andrew Pacheco (Doc. 113) and Defendant's Motion to Exclude Plaintiff's Expert Lauren Freeman and Motion to Exclude Dr. Brady Wilson's Credibility Opinion (Doc. 119). For the following reasons, the Court grants Defendant's Motion for Summary Judgment, denies Plaintiff's Motion to Strike, and terminates the remaining motions as moot.[1]

## BACKGROUND

On February 27, 2016, officers of the Lake Havasu City Police Department

---

[1] The request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Inv's Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

responded to a report by Plaintiff's wife, Mayra Gonzales, that Plaintiff had assaulted her and attempted to prevent her from calling the police. Plaintiff was subsequently charged with assault, disorderly conduct, and preventing the use of a telephone in an emergency. On March 16, 2016, Ms. Gonzales provided the Lake Havasu City prosecutor, Kristen Rienfeld, with an unsigned retraction letter in which she recanted her prior statements regarding the events of February 27, 2016. In the letter, Ms. Gonzales claimed that she was not the victim of any violence and did not want to pursue any legal action against Plaintiff. Ms. Gonzales submitted a second letter to the same effect on June 8, 2016. The second letter was signed and notarized. Plaintiff's case proceeded to a bench trial on June 13, 2016. Ms. Rienfeld did not call Ms. Gonzales to testify, and instead presented only testimony from the officers who responded to the Gonzales's home on the night of the incident. Plaintiff was convicted on July 27, 2016.

The following day, Ms. Rienfeld filed charges against Ms. Gonzales for making false statements to the police on the night of the incident. This prompted Plaintiff to file a Motion for New Trial. In the motion, Plaintiff argued that Ms. Rienfeld's failure to inform Plaintiff that Ms. Gonzales was charged with false statements amounted to prosecutorial misconduct and *Brady* violations. Plaintiff accused Ms. Rienfeld of charging him while at the same time believing Ms. Gonzales lied about the allegations for which he was convicted. Plaintiff's direct supervisor, Charles Yager, City Prosecutor, answered Plaintiff's Motion for New Trial because Ms. Rienfeld was on vacation. However, that was the extent of his involvement in the case. Before Plaintiff was sentenced, the court held oral argument on the Motion for New Trial and the presiding judge dismissed Plaintiff's charges with prejudice "in the interest of justice." The court, however, declined to find prosecutorial misconduct or *Brady* violations.

In October 2017, Plaintiff brought this suit against Defendant and Ms. Rienfeld in her individual capacity under 42 U.S.C. § 1983 for alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights. Plaintiff's original complaint also included claims for malicious prosecution and abuse of process. On January 22, 2018, Defendant and

Ms. Rienfeld filed a Motion for Judgment on the Pleadings. The Court dismissed with prejudice all claims against Ms. Rienfeld, finding that she was entitled to the defense of absolute immunity. The Court also dismissed the malicious prosecution and abuse of process claims against Defendant, but granted Plaintiff leave to amend the complaint to make clear "whether the claim is brought under 42 U.S.C. § 1983 or as a standalone state-law tort claim." (Doc. 42 at 9.) Finally, the Court denied the Motion as to the 42 U.S.C. § 1983 claim against Defendant, finding that Plaintiff's allegations were sufficient to state a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). On July 20, 2018, Plaintiff timely filed an Amended Complaint. The Amended Complaint maintained three causes of action against Defendant: (1) a *Monell* claim under § 1983 for violations of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights; (2) malicious prosecution under § 1983; and (3) abuse of process under § 1983. Additionally, Plaintiff alleged Arizona common law malicious prosecution and Arizona common law abuse of process. Defendant filed a Second Motion for Judgment on the Pleadings. The Court found that Plaintiff plausibly alleged a § 1983 claim against the City for alleged violations of his Fifth, Sixth, and Fourteenth Amendment rights and for malicious prosecution under § 1983 and Arizona state law. The Court dismissed Plaintiff's federal claim for abuse of process but found that he had stated a claim under Arizona law. Defendant now brings this motion for summary judgment on the remaining claims. Plaintiff opposes Defendant's motion and moves to strike certain exhibits and witnesses relied upon by Defendant in its Motion for Summary Judgment.

## DISCUSSION

### I. Plaintiff's Motion to Strike

Plaintiff moves to strike Defendant's Exhibits 11, 17, 18, and 20. Defendant withdraws, for purposes of this motion only, Exhibits 11, 18, and 20.[2] Thus, Exhibit 17—

---

[2] The withdrawn exhibits support Defendant's argument that there was not an express policy or practice of violating any constitutional rights. Because Plaintiff seemingly concedes this point by failing to dispute Defendant's argument in his response, Defendant voluntarily withdrew the exhibits. *See E.E.O.C. v. Walgreen Co.*, CIV–05–1400–PCT–FJM, 2007 WL 926914, at *9 n.2 (D. Ariz. Mar. 26, 2007) ("We deem plaintiff's failure to

the declaration of Ms. Kelly Garry, City Attorney—is the only exhibit in dispute. Defendant seeks to use Ms. Garry's declaration, among other evidence, to demonstrate that Ms. Garry, not Mr. Yager, has "final policymaking authority" for purposes of refuting Plaintiff's *Monell* claim. Plaintiff argues that Defendant did not disclose Ms. Garry as a fact witness until its Tenth Supplemental Mandatory Discovery Response ("10th MIDR") on Friday, July 12, 2019—three days before the close of discovery. Plaintiff further claims that the disclosure was sent to Plaintiff by mail and was not received until after the close of discovery. Thus, Plaintiff moves to strike the declaration testimony as untimely.

Federal Rule of Civil Procedure 26 requires parties to provide opposing parties "the name . . . of each individual likely have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) requires parties to supplement those disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The party facing sanctions has the burden to show that the failure to disclose was substantially justified or harmless. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

In its November 19, 2018 response to Plaintiff's Request for Admission Defendant sufficiently identified Ms. Garry as having supervisory policymaking authority over Mr. Yager for purposes of imposing liability under § 1983. Plaintiff had requested an admission that "the Lake Havasu City Prosecutor does in fact have final decision-making authority regarding criminal prosecutions conducted by either the Lake Havasu City Attorney, the Lake Havasu City Prosecutor, or the Lake Havasu Assistant Prosecutor,"

respond to this argument a consent to the granting of summary judgment on this ground.") (citing LRCiv 7.2(i)).

- 4 -

(Doc. 141-1 at 5–6), to which Defendant responded,
> The Lake Havasu City Attorney's Office has only two prosecutors, Charles Yager and Kristin Rienfeld. Charles Yager supervises Ms. Rienfeld. Kelly Garry, the Lake Havasu City Attorney, supervises Mr. Yager. The City denies that Mr. Yager is a "final" decision-maker, for purposes of imposing liability on the City under §1983, because although Ms. Garry does not typically exercise her authority to override prosecutorial decisions made by either Mr. Yager or Ms. Rienfeld, she is Mr. Yager's direct supervisor.

(Doc 141-1 at 6.) Defendant also provides excerpts from Mr. Yager's June 2019 deposition that further detail Ms. Garry's authority over Mr. Yager.[3] Pursuant to Rule 26(e) and General Order 17-08, new information revealed in a written discovery response or deposition in a manner that reasonably informs all parties of the information need not be presented in a supplemental response. *See* Fed. R. Civ. P. 26(e) ("A party . . . must supplement or correct its disclosure or response . . . if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."); AZ R USDCT Order 17-08 ("If new information is revealed in a written discovery response or a deposition in a manner that reasonably informs all parties of the information, the information need not be presented in a supplemental response."). This is sufficient pre-disclosure such that the final supplemental disclosure was not unfair to the Plaintiff and will not be excluded. Plaintiff had previously learned of Ms. Garry's identity during discovery and had ample opportunity to pursue follow up discovery with her if he so chose.

Plaintiff argues that he relied on Defendant's previous contention that Mr. Yager

---

[2] Q: Now, who do you report to directly?

A: Kelly Garry

Q: And what is her title?

A: City Attorney

. . .

Q: And if you did it, for example, you implemented prosecutorial policies, and Kelly Garry, the city attorney, didn't agree with them, does she have the authority to override your decisions in implementing policies or procedures?

A: Absolutely, as my boss. She – I would try to argue my point, whether those policies and procedures are appropriate because I have this experience; but ultimately, it would be up to her as department head.

(Doc. 117-14 at 14-15.)

1 was the City Attorney and that Lake Havasu City Council was the final decision maker. Defendant, however, made these assertions prior to the November 19, 2018 written discovery response and June 2019 depositions. Thus, Plaintiff was made aware of Defendant's present theory that Ms. Garry is the final policymaker through the discovery process. Plaintiff was put on notice long before the close of discovery that Ms. Garry may have discoverable information. The Court declines to strike Ms. Garry's declaration because it contains facts timely disclosed and any delayed disclosure of Ms. Garry as a witness was harmless.

## II. Defendant's Motion for Summary Judgment

### A. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## B. Analysis

### 1. Section 1983 Liability

"[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95). A municipality causes a constitutional violation when the violation results from: (1) a city employee acting pursuant to an expressly adopted official policy; (2) a city employee acting pursuant to a longstanding practice or custom; or (3) a city employee acting as a "final policymaker." *Lytle v. Carl*, 382 F.3d 978, 982–83 (9th Cir. 2004). Plaintiff does not produce any evidence that Defendant had a custom, pattern, practice or policy of violating constitutional rights in this respect. Thus, Plaintiff must prove that the conduct alleged in the complaint was made or approved by a final policymaker.

Municipal liability can attach when a municipal official with final policymaking authority makes a deliberate choice to follow a course of action. *Pembaur v. City of Cincinnati*, 475 U.S. 469 482–83 (1986). "A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe Cty.*, 520 US. 781, 784–85 (1997) (quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. 469, 483 (1986).

In this case, the question is whether there was a policy, or a decision by a final policy maker, that resulted in the continuation of Plaintiff's prosecution after Ms. Gonzales's retraction. Defendant cites to the Lake Havasu City Code (the "City Code") which

identifies the City Council as the City's policymaker. Lake Havasu City Code § 2.04.010; s*ee also City of St. Louis v. Proprotnik*, 485 U.S. 112, 128 (1988) (acknowledging that "state law" includes "valid local ordinances and regulations"). The City Code also suggests that all Assistant City Attorneys, City Prosecutors, and Assistant City Prosecutors "serve at the pleasure of the City Attorney." Lake Havasu City Code, § 2.16.010. The cited provisions suggest that the City Attorney has authority to direct the City Prosecutor as he or she sees fit. *See Proprotnik*, 485 U.S. at 128 ("[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it."). In no way does the City Code suggest that a City Prosecutor, like Mr. Yager, has *final* policymaking authority.[4] *See McMillian v. Monroe Cty.*, 520 U.S. 781, 785 (1997) ("[O]ur understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law").

Mr. Yager, however, need not have policymaking authority generally, but only with respect to the decision at issue. *Proprotnik*, 485 U.S. at 123 ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business."). Nonetheless there is a distinction between final decision-making authority and final policymaking authority. In *Pambaur*, the Court provided the following example:

> [I]f county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could rise to municipal liability.

475 U.S. at 483 n.12(emphasis in original). "The authority to make municipal policy is

---

[4] In Defendant's prior briefing it alleged that Mr. Yager was the City Attorney at the time of Plaintiff's Prosecution. Defendant now asserts that Mr. Yager was the City Prosecutor, and Ms. Garry was the City Attorney. In response to the Defendants' motion for summary judgment the Plaintiff does not raise any issue of fact as to the identity of the City Attorney as being Ms. Garry. The Court, therefore treats this fact as being uncontested.

necessarily the authority to make *final* policy." *City of St. Louis v. Proprotnik*, 485 U.S. 112, 128 (1988). Where an official's decision is "constrained by policies not of that official's making" and where the official's decision is "subject to review by the municipality's authorized policymakers" the official is not a final policymaker for purposes of establishing municipal liability. *Id.* at 127.

Plaintiff asserts that Mr. Yager had final policy making authority because he had "final decision-making authority to terminate" Plaintiff's prosecution and was tasked with "develop[ing] written policies & procedures regarding criminal prosecutions." (Doc. 137 at 4.) Defendant does not dispute that Mr. Yager had decision-making authority concerning Plaintiff's case, but decision-making authority is not sufficient for *Monell* liability.

By Plaintiff's own admission, Mr. Yager's policymaking authority was subject to the constraints of the "City requirements." (Doc. 138 at 15.) ("Mr. Yager's 'Work Objectives' and 'Key Assignments' include that he 'Continue to develop written policies & procedures re: prosecution activities *consistent with legal authority/City requirements*[.]'") (emphasis added). Defendant also provided uncontroverted evidence that the City Attorney has the authority, and has exercised her authority, to override any of Mr. Yager's decisions.[5] Because Mr. Yager is both constrained by policies not of his making, and his decisions are subject to review by policymakers, the evidence fails to establish an issue of fact as to whether Mr. Yager has final policymaking authority in this instance.[6]

As a result, Plaintiff's claims asserted under § 1983—(1) *Monell* claim for violations

---

[5] *Supra* n.2; Ms. Kelly Garry the City Attorney testified in her declaration, "[a]lthough not involved in the day-to-day decisions involving the prosecution of each case, I have the ultimate authority to implement policy and am the final decision maker in all regards. . . . Each and every one of Mr. Yager's decision is subject to my reversal should I determine it necessary to do so." (Doc. 117-17 at 3.) Ms. Kelly Garry's declaration also states, "I have exercised my final policy and decision making authority over City Prosecutor Mr. Yager in matters involving criminal prosecution. One such instance was occurred when reversing Mr. Yager's decision to remove certain provisions in his plea agreements." (*Id.*)

[6] Plaintiff also argues that Mr. Yager ratified Ms. Rienfeld's conduct. However, Plaintiff's ratification argument also requires that Mr. Yager be a "final policymaker." *See Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Because he is not, Plaintiff's ratification argument necessarily fails.

of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights and (2) Malicious Prosecution[7]—fail as a matter of law. Defendant's Motion for Summary Judgment is granted with respect to these claims.

### 2. State Law Malicious Prosecution and Abuse of Process Claims

Defendant argues that Plaintiff's state law claims for malicious prosecution and abuse of process fail because Plaintiff fails to produce any evidence supporting independent liability by Defendant. Defendant further asserts that all of Plaintiff's allegations with respect to malicious prosecution and abuse of process "are really against Mr. Yager in his individual prosecutorial capacity, which would be barred by prosecutorial immunity." (Doc. 123 at 22.) Plaintiff does not argue to the contrary. However, it is worth noting that Plaintiff's allegations (i.e. that Mr. Yager failed to terminate Plaintiff's prosecution) fall squarely within the conduct protected by absolute immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (holding that prosecutors are absolutely immune from liability for their conduct in initiating a prosecution and in presenting the State's case).

This Court previously explained that Defendant could be held liable for Plaintiff's state law claims if Plaintiff could demonstrate that Defendant acted independently of its employees. (Doc. 42 at 8) (citing *Ford v. Revlon, Inc*., 734 P.2d 580, 584 (Ariz. 1987)). The Court acknowledged Plaintiff's claim that Defendant maintained the specific policy that led to Plaintiff's prosecution as being sufficient to allege malicious prosecution and abuse of process against Defendant. Plaintiff, however, has abandoned this argument. Because Ms. Rienfeld and Mr. Yager are immune from liability with respect to Plaintiff's claims and Plaintiff fails to point to any facts in the record that suggest Defendant acted independently, a reasonable juror could not return a verdict in favor of Plaintiff with respect to his state law claims or malicious prosecution and abuse of process. *See Ford*, 153 Ariz.

---

[7] The Court does not find, as it may have suggested in its April 16th order in this action, that Plaintiff may assert a Malicious Prosecution claim under § 1983 against Defendant without proving the elements set forth in *Monell. See Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) (acknowledging that § 1983 malicious prosecution claim may be brought against City Council officials but making no mention of such an action against a City entity); *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (finding that the plaintiff alleged a claim against the county by alleging the actor's misconduct conformed to a county policy as permitted by *Monell*).

at 42, 734 P.2d at 584 ("[W]hen the master's liability is based solely on the negligence of his servant, a judgment in favor of the servant is a judgment in favor of the master."). Defendant's Motion for Summary Judgment with respect to these claims is granted.

## CONCLUSION

The Court declines to strike Exhibit 17 because Defendant acted within the rules of discovery and any perceived delay was harmless. Exhibits 11 18, and 20 were voluntarily withdrawn. The Plaintiff has failed to raise an issue of material fact suggesting that Mr. Yager is a final policy maker for purposes of *Monell* liability under § 1983. Because Plaintiff makes no other argument, Plaintiff's claims brought under § 1983—(1) *Monell* claim for violations of Plaintiff's Fifth, Sixth, and Fourteenth Amendment rights and (2) Malicious Prosecution—fail. Similarly, Plaintiff fails to establish viable state law claims for malicious prosecution and abuse of process against Defendant. The parties' remaining motions pertaining to the admissibility of expert testimony are terminated as moot.

**IT IS THEREFORE ORDERED** that Defendant City of Lake Havasu City's Motion for Summary Judgment (Doc. 123) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Tom Gonzales's Motion to Strike (Doc. 137) with respect to Exhibit 17 is **DENIED**. The Motion is terminated as moot with respect to Exhibits 11, 18, and 20.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Preclude the Testimony of Defendant's Expert Witness Andrew Pacheco (Doc. 113) is terminated as moot.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Plaintiff's Expert Lauren Freeman and Motion to Exclude Dr. Brady Wilson's Credibility Opinion (Doc. 119) is terminated as moot.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 11th day of December, 2019.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

- 11 -